IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **Charles Hearn,** § § § | |
| *Plaintiff,* § § | |
| v. § § | Case No. 3:22-cv-1049 |
| **Dwayne G. Bishop, V. A. & T., Inc., Congregational Security, Inc., and Classic Security Services, Inc.** § § § § § | JURY REQUESTED |
| *Defendant.* § | |

## ORIGINAL COMPLAINT

Plaintiff Charles Hearn ("Plaintiff" or "Hearn"), by and through its counsel, complains of Defendants Dwayne G. Bishop ("Bishop"), V. A. & T., Inc. ("VAT"), Congregational Security, Inc., ("CSI"), and Classic Security Services, Inc. ("CSSI") (collectively, "Defendants") and hereby alleges as follows:

### I.   PRELIMINARY STATEMENT

1. This is an individual action for unpaid wages and overtime brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for retaliation, and for fraudulent transfer.

2. In 1938, Congress passed the FLSA in an attempt to eliminate low wages, long hours, and provide American workers with a wage that would support a minimum standard of living. The purpose of the FLSA is to provide "specific minimum protections to individual workers and to ensure that each employee covered by the Act ... receive[s] '[a] fair day's pay for a fair day's work' and [is] protected from 'the evil of "overwork" as

well as "underpay." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). The FLSA seeks to achieve these goals by establishing a minimum wage and the prohibition of performing more than forty (40) hours of work in a single workweek without the payment of a premium or "overtime" rate.

3. The FLSA does not prohibit overtime, but rather, by imposing a premium rate for overtime, the FLSA discourages employers from over working and underpaying their employees who work for longer than forty (40) hours in a single workweek. *See Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 577-78 (1942).

4. Section 207(a) of the FLSA requires covered employers to compensate its non-exempt employees in an amount not less than one-and-a-half times his or her regular rate of pay for each hour worked in excess of forty (40) in a given week. 29 U.S.C. § 207(a)(1).

5. Plaintiff was non-exempt from overtime and routinely worked in excess of forty (40) hours in a workweek.

6. Defendants VAT and CSI did not compensate Plaintiff at time and one half his regular rate for hours worked after forty (40) in a workweek.

7. Section 206(a) of the FLSA requires covered employers to compensate employees at a rate not less than the minimum wage for all hours worked. *See* 29 U.S.C. § 206(a).

8. Defendants VAT and CSI did not compensate Plaintiff for each and every hour and workweek that Plaintiff worked for Defendants during the statutory time period.

9. Plaintiff was not paid the minimum wage rate for each and every hour worked during the statutory time period.

10. Section 215(a)(3) of the FLSA makes it unlawful "for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3).

11. Because Plaintiff complained of Defendants' unlawful payment policies, Defendants swiftly responded by terminating Plaintiff's employment.

12. Defendant unlawfully retaliated against Plaintiff in violation of the FLSA's anti-retaliation provisions.

13. After Plaintiff threatened to bring this lawsuit, Defendant VAT and CSI fraudulent transferred all assets of CSI to a new company, CSSI, in violation of the Texas Uniform Fraudulent Transfer Act.

## II.   PARTIES

14. Plaintiff Charles Hearn is an individual residing in Dallas County, Texas.

15. Defendant Bishop is an individual residing in Dallas County, Texas and may be served with process at his address 1212 Ashbrook Drive, Grand Prairie, Texas 75052, or wherever he may be found.

16. Defendant VAT is a Texas corporation with its principal place of business in Dallas County, Texas and may be served with process by and through its registered agent Dwayne Bishop at his address 1212 Ashbrook Drive, Grand Prairie, Texas 75052, or wherever he may be found.

17. Defendant CSI is a Texas corporation with its principal place of business in Dallas County, Texas and may be served with process by and through its registered agent Dwayne Bishop at his address 1212 Ashbrook Drive, Grand Prairie, Texas 75052, or wherever he may be found.

18. Defendant CSSI is a Texas corporation with its principal place of business in Dallas County, Texas and may be served with process by and through its registered agent Dwayne Bishop at his address 1212 Ashbrook Drive, Grand Prairie, Texas 75052, or wherever he may be found.

### III.   JURISDICTION AND VENUE

19. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1337 and the doctrine of pendant jurisdiction.

20. Venue is proper in the United States District Court for the Northern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred in Dallas, Texas.

21. This Court has personal jurisdiction over Defendants because Defendants conduct business and reside in the State of Texas.

### IV.   COVERAGE UNDER THE FLSA

22. At all relevant times, Defendants VAT and CSI have each, individually and jointly, been an "employer" of Plaintiff within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23. Defendants VAT and CSI had control over Plaintiff's work and work schedules and pay. Defendants VAT and CSI also controlled the day-to-day decisions by

making strategic, operational and policy decisions, and exerting operational control over its employees, including Plaintiff. Moreover, Defendants VAT and CSI had the power to hire and fire employees, discipline employees, create and enforce employee policies, and set employee compensation. At all relevant times, Defendants VAT and CSI have each, individually and jointly, acted directly or indirectly in the interest of an employer in relation to Plaintiff, therefore Defendants are individually, and jointly liable as an employer as defined in § 3(d) of the FLSA, 29 U.S.C. § 203(d); *Velazquez v. El Pollo Regio IP, LLC*, Civil Action No. 3:15-cv-03170-M, 2016 U.S. Dist. LEXIS 89089, at *6-8 (N.D. Tex. July 11, 2016) (*citing Reich v. Circle C Invs.*, 998 F.2d 324, 329 (5th Cir. 1993)).

24. At all relevant times, VAT and CSI have been an "enterprise" within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r), in that Defendants have been, through unified operation or common control, engaged in the performance of related activities for a common business purpose.

25. At all relevant times, VAT and CSI, both individually and jointly together, have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise jointly, and each individually, have had: (a) employees engaged in commerce or in the production of goods for commerce; or (b) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise tax).

By way of example, and not limitation, VAT and CIS recruit security officer from outside of Texas and market their companies across the United States.

26. At all relevant times, Plaintiff was an "employee" (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)) for Defendants VAT and CSI who was engaged in commerce or handled goods that were and are traveling in interstate commerce as required by 29 U.S.C. §§ 206-207. *See Reich v. Circle C. Investments, Inc.*, 998 F.2d 324 (5th Cir. 1993).

27. During the relevant period, Defendants VAT and CSI willfully violated the FLSA, by employing Plaintiff in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and failing to compensate Plaintiff in accordance with the FLSA minimum wage and overtime provisions cited herein.

## V.   FACTS

28. Plaintiff began his employment with CSI in September of 2016, initially as a post officer.

29. In February 2021, Plaintiff was promoted to Operations Supervisor of the Dallas Division of CSI. In this role, Plaintiff had several critical management responsibilities. Among other things, Plaintiff was responsible for

   a. ensuring that all officers assigned to him clocked in and out on the appropriate property they were assigned;

   b. monitoring clock in and clock out time for each officer;

    c. ensuring that officers did not start working at a property until set up in ADP;

    d. approving time worked;

    e. verifying officer's activity on the property in Silvertrac;

    f. ensuring all Barcodes were scanned at assigned locations;

    g. reviewing written documentation in Silvertrac and ensuring that reporting was consistent and met reporting standards;

    h. monitoring work flow and making adjustments to schedules to ensure officer coverage for various properties to which he was assigned;

    i. engaging with the property manager to ensure a two-way communication was established;

    j. providing proactive customer service;

    k. keeping assigned officers abreast of issues and providing notification of any changes on the properties;

    l. keeping the President and CEO of CSI abreast of any issues on the properties and advising them of potential areas of concern; and

    m. advising on the hiring and firing of officers.

30. Although characterized by CSI as an independent contractor and receiving payments from CSI and VAT through an IRS Form 1099, Plaintiff was, in fact (and at law), an employee.

31. To be sure, Plaintiff made several requests to CSI and VAT during his employment to request that CSI and VAT properly classify him and other employees as

such. For example, on or around January 17, 2021, Plaintiff emailed the Director of Operations for CSI regarding issues with classification of employees. Plaintiff even offered possible solutions for his employer to legally and properly classify employees. At the time, Plaintiff was told verbally that his employer would look into the matter.

32. In October 2021, Plaintiff sent an email to Sean Smith and Dwayne Bishop of CSI and VAT detailing his complaints about being misclassified and requesting that he be paid overtime for the hours worked during his time as an employee of CSI. In that email, Plaintiff specified the precise amount of overtime pay to which he believed he was due, including the following:

2019- $11,918.50

2020- $8,653.00

2021- $8,535.00

**Total: $29,106.50**

33. CSI initially ignored Plaintiff's email and demand. On November 2, 2021, Plaintiff again requested that his request for proper classification and remuneration be addressed. When no answer was given to this follow up email, on November 5, 2021, Plaintiff sent another email.

34. On November 5, 2021, CSI responded that "[the] matter was sent to HR and they will respond." When no response was given, on November 12, 2021, Plaintiff demanded an update. CSI again responded that the matter "has been brought to the attention of [its] HR department and legal department." The curt email from Bishop,

implores Plaintiff to "[p]lease allow [CSI's] legal people to investigate [his] request … [CSI] will have this resolved by the end of the year."

35. What Plaintiff did not anticipate, however, was the adverse actions that CSI and its owner would take against him because of his formal complaint about misclassification and failure to pay overtime in violation of applicable law. Specifically, after sending his initial email in October 2021 and exchanging emails with Bishop in November 2021, the following occurred:

  a. On November 15, 2021, only three (3) days after receiving Bishop's response to his inquiry about misclassification and overtime, Plaintiff was sent an email telling him that his hours were reduced, he could no longer charge for administrative duties performed while off property, and that he would still be expected to perform all his position responsibilities, which would be impossible. After speaking to CSI supervisors, he learned that no other supervisor was given such restrictions, nor were any officers at the company asked to comply with such stringent standards.

  b. On November 20, 2021, Plaintiff was removed from the payroll automated emailing system. Despite requesting to be placed back into the email chain, he received no response from CSI.

  c. Between December 15, 2022 and December 16, 2021, Plaintiff was informed by CSI that he would no longer manage at least nine (9) of the properties he previously managed. Plaintiff was told he would only keep one property moving forward.

  d. During December 2021, Plaintiff discovered that the Director of Operations for CSI had contacted all supervisors to set up a supervisor meeting during the month of December. Inexplicably, Plaintiff was the only supervisor not contacted by the Director of Operations and not invited to the December meeting. During the meeting, the other supervisors were instructed not to share any information with any supervisor not invited. Plaintiff was the only supervisor not invited.

  e. The company officers and directors began to "ghost" Plaintiff. Specifically, he attempted to reach out to the Director of Operations via telephone

   regarding issues occurring in his position (as required by his job description) without any response from the Director.

  f. Plaintiff did not receive any standard invites for his properties' monthly EMPACT meetings in December as has occurred monthly since taking his position in February 2020.

  36. On December 22, 2021, Plaintiff sent an email to the Director of Operations for CIS and Bishop with concerns regarding how all supervisors were told to cease communications with Plaintiff and how that directive interfered with Plaintiff's performance of his work obligations. Included in the email were concerns about all the actions taken by CSI and Bishop since November 2021, including removal from the payroll automated email, having his permissions removed from the company software, and the removal of 9/10 properties from Plaintiff, among other things. In response, Bishop called Plaintiff and explained that Plaintiff needed to stay with only one property, but that CSI would make good on the promise to pay his debt to Plaintiff for overtime.

  37. As it turns out, the foregoing actions taken by CIS and Bishop were just adverse precursors to the eventual termination that would come in the form of a conversation between Defendant Bishop and Plaintiff on or around January 8, 2022. In the conversation, Defendant Bishop, attempted one last ditch effort to resolve matters by offering a paltry $15,000 in exchange for Plaintiff's resignation. Plaintiff rejected that insulting offer.

  38. Upon rejection, Defendant Bishop explained that CSI would no longer be contracted with the single property that CSI had left Plaintiff to manage. According to Bishop, a new company which was recently formed by Bishop on December 20, 2021 –

ORIGINAL COMPLAINT                             PAGE 10

Defendant Classic Security Services, Inc. ("CSSI") – would take over the contract for that single property, leaving Plaintiff without any work.

39. CSSI is wholly owned and controlled by Defendant Bishop, just as CSI is currently owned and controlled by Bishop.

40. Upon information and belief, Defendant VAT, CSI, and CSSI are all alter-egos of Defendant Bishop. Indeed, Defendant Bishop formed Defendant CSSI in order to transfer assets of CSI away to avoid an adverse judgment and collection actions against it for unpaid wages.

## VI.   CAUSES OF ACTION

**COUNT ONE— FAILURE TO PAY OVERTIME WAGES IN ACCORDANCE WITH THE FAIR LABOR STANDARDS ACT**

41. The foregoing paragraphs are fully incorporated herein.

42. During the relevant time-period, Plaintiff was an employee working for Defendants VAT and CSI.

43. During the relevant time-period, Plaintiff was non-exempt from the FLSA's overtime requirements.

44. The overtime laws under the FLSA require employers, such as Defendants VAT and CSI, to pay overtime compensation to all employees, unless they are exempt from the overtime pay requirements under the FLSA.

45. Plaintiff did not qualify as an exempt employee under any overtime exemption.

46. Plaintiff was entitled to a premium overtime rate of one-and-one-half times their regular rate for all hours worked over forty (40) hours in a single work week.

47. Plaintiff failed to receive one-and-one-half times his regular hourly rate for all hours Plaintiff worked over forty (40) in a single work week.

48. Plaintiff regularly worked in excess of forty (40) hours in a single work week.

49. Plaintiff's regular rate must include all compensation, bonuses, and other remuneration paid by Defendants VAT and CSI for purposes of calculating the overtime rate. *See* 29 C.F.R. 778.208.

50. During the relevant time period, Defendants VAT and CSI violated the provisions of Section 7 of the FLSA, 29 U.S.C. § 207, and 215(a)(2), by employing Plaintiff in an enterprise engaged in commerce or in the production of commerce within the meaning of the FLSA, as aforesaid, and failing to pay Plaintiff, at a rate of not less than one and one-half times the regular rate for every hour worked over forty (40) in a workweek. Plaintiff's regular rate must also include all compensation, bonuses, and other remuneration paid by Defendants for purposes of calculating the overtime rate.

51. Defendants VAT and CSI violated the FLSA by failing to compensate Plaintiff for all hours spent performing their job duties and/or work tasks.

52. None of the exemptions or defenses provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required overtime rate are applicable to Defendants or Plaintiff.

**COUNT TWO – UNLAWFUL RETALIATION UNDER THE FAIR LABOR STANDARDS ACT**

53. The foregoing paragraphs are fully incorporated herein.

54. The FLSA makes it unlawful "for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3).

55. Plaintiff engaged in a protected activity. Specifically, Plaintiff made several complaints to VAT, Bishop, and CSI about their failure to pay Plaintiff in accordance with the FLSA. These complaints were made via email in October 2021 and continued for weeks thereafter.

56. After Plaintiff made his initial complaint, Plaintiff again inquired regarding his classification status under the FLSA during telephone and in-person conferences.

57. Plaintiff was subjected to an adverse employment action following the protected activity. Among other things, Plaintiff was terminated by VAT and CSI after refusing to accept Bishop's offer of compromise regarding his overtime wages.

58. The adverse employment actions taken by VAT and CIS and Plaintiff's eventual termination are casually connected to his engaging in a protected activity. Specially, after Plaintiff contacted Defendants regarding his classification as an exempt employee under the FLSA and Defendants' failure to pay Plaintiff for overtime wages, Defendant began taking actions to remove responsibilities from Plaintiff, including

relegating Plaintiff to only one property. Upon Plaintiff's rejection of a settlement offer by Bishop to resolve his overtime concerns, VAT and CSI terminated Plaintiff.

59. Defendants' retaliatory decision to terminate Plaintiff from his employment within a few weeks of his questioning Defendants' compensation policies was based his protected activity—namely, complaining that Defendants' compensation policies did not comply with the FLSA's overtime and minimum wage requirements. Defendants terminated Plaintiff's employment with a clear retaliatory motive and without cause.

60. Defendants' retaliatory conduct subjects Defendants to additional liability for unlawful retaliation in violation of the FLSA's anti-retaliation provisions. Section 215(a)(3) has been interpreted broadly to protect individuals such as Plaintiff from retaliatory action for taking steps to vindicate their rights under the FLSA. See 29 U.S.C. § 215(a)(3).

61. Plaintiff's retaliation claim under the FLSA does not require proof an actual violation of the FLSA – it is a stand-alone claim. *See, e.g.*, *Colvin v. Volusion, Inc.*, No. A-17-CV-139-LY, 2017 WL 2805010, at *4 (W.D. Tex. June 28, 2017) ("The FLSA does not require that a plaintiff successfully prove a claim for overtime under the FLSA, but merely that the plaintiff prove he was engaged in protected activity.") (*citing Little v. Techical Specialty Products, LLC*, 940 F. Supp.2d 460, 478 (E.D. Tex. 2013); *Marcotte v. City of Rochester*, 2017 WL 392013, *2 (2nd Cir. 2017) ("It is possible to state an anti-retaliation claim under the FLSA without proving an actual violation of the FLSA.")).

ORIGINAL COMPLAINT                                                                                          PAGE 14

**COUNT THREE – VIOLATION OF THE TEXAS UNIFORM FRAUDULENT TRANSFER ACT (AGAINST VAT, CSI, AND CSSI)**

62. The foregoing paragraphs are fully incorporated herein.

63. Plaintiff asserts claims against Defendants VAT, CSI, and CSSI pursuant to Chapter 24 of the Texas Business & Commerce Code, the Texas Uniform Fraudulent Transfer Act (the "Act").

64. Pursuant to § 24.005 of the Act, Bishop's formation of CSSI and subsequent transfer to CSSI of the contract for the one property managed by Plaintiff was improper. This transfer was made to render Defendants VAT and CSI judgment proof in the event the Plaintiff was successful in his lawsuit. These transfers were made after Defendants became aware of the claims against it, and with the actual intent to hinder, delay or defraud Plaintiff who is a would be creditor. These transfers were made shortly after Defendants refused to pay Plaintiff the compensation owed to him. In order to obtain satisfaction of any judgment obtained against Defendants, Plaintiff pursuant to § 24.008 of the Act asks this Court to void the transfers and order the funds and any proceeds received by CSSI transferred back from which they came, an injunction against further transfers and appointment of a receiver to take charge of the transferred assets to the extent of Plaintiff's claims. Under § 24.013 of the Act, Plaintiff also seeks the recovery of their costs and reasonable attorneys' fees.

**COUNT FOUR – ALTER EGO (AGAINST ALL DEFENDANTS)**

65. Upon information and belief, the Defendants are all alter egos of one another. Specifically, there is a shared financial interest and control between and among

the Defendants, there is such a unity between and among the Defendant that the separateness of Defendants has ceased to exist, and holding only CSI or VAT liable would result in injustice. In addition, Defendant Bishop is using the corporate form of VAT, CSI and/or CSSI as a "sham" to insulate himself from liability for his improper and unlawful conduct. Accordingly, each Defendant is liable for any liabilities incurred by the other Defendants.

## VII.   DAMAGES SOUGHT

66.   Plaintiff is entitled to recover compensation for the hours worked and for all hours Plaintiff worked over forty (40) in a single workweek and did not receive overtime compensation as required by 29 U.S.C. § 207.

67.   Plaintiff is entitled to an amount equal to all of his unpaid wages (including unpaid overtime compensation and minimum wages) and fees in the form of liquidated damages. *See* 29 U.S.C. § 216(b).

68.   Additionally, Plaintiff is entitled to recover attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

69.   As a result of Defendants' unlawful retaliation in violation of the FLSA's antiretaliation provisions, Plaintiff is entitled to recover all legal and equitable relief that may be appropriate including an award for compensatory damages, non-compensatory damages, lost wages (past and future), front pay, back pay, liquidated damages, and punitive damages. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without

limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages."); *see also Brown v. Creative Rests., Inc.*, No. 11-2710-STA-cgc, 2013 U.S. Dist. LEXIS 189927, at *17 (W.D. Tenn. 2013) (punitive damages appropriate for FLSA retaliation).

## VIII.   DEMAND FOR JURY TRIAL

70. Plaintiff demands a trial by jury on all issues so triable.

## IV.   PRAYER

Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

A. For an order pursuant to section 216 of the FLSA finding Defendants jointly and severally liable for unpaid wages (including unpaid overtime compensation and minimum wages) due to Plaintiff and for liquidated damages equal in amount to the unpaid wages (including overtime compensation and minimum wages) due to Plaintiffs;

B. For an order pursuant to section 216 of the FLSA finding Defendants jointly and severally liable to Plaintiff for all compensatory and non-compensatory damages arising from Defendants' unlawful retaliation;

C. To the extent permitted, for an order awarding Plaintiff an amount of pre-judgment interest computed at the underpayment rate established by the Secretary of Treasury pursuant to 26 U.S.C. § 6621;

D. For an order awarding Plaintiff all attorneys' fees incurred;

E. For an order awarding Plaintiff all costs and expenses incurred in pursuing this action; and

F. For an order granting any such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Nathanial L. Martinez*

**NATHANIAL L. MARTINEZ**
State Bar Number: 24074661
nmartinez@palterlaw.com

**PALTER SIMS MARTINEZ PLLC**
15443 Knoll Trail Drive
Suite 100
Dallas, Texas 75248
Tel.: (214) 888-3114
Fax: (214) 888-3109

**ATTORNEY FOR PLAINTIFF
CHARLES HEARN**